Gants, J.
By way of background, Mira, Inc.(“Mira”) has filed suit against its former President and Chief Executive Officer (“CEO’jthe defendant Daniel O’Brien (“O’Brien”) alleging that O’Brien breached his employment contract and his fiduciary duty to Mira by entering into a commissions contract with Gateway, Inc. (“Gateway”) on behalf of Mira in September 2000. Mira essentially makes two allegations against O’Brien. First, it alleges that O’Brien lacked actual authority to enter into such a contract on behalf of Mira because he was no longer its President and CEO when the agreement was executed. Second, it alleges that the agreement, which allowed Gateway a 15 percent commission on all sales, was so “one sided and grossly unfair” that O’Brien could not possibly believe that he was authorized to execute the agreement, since the agreement pragmatically would mean that Mira would take a loss on each sale of its product to Asian dealers. Mira’s Answers to O’Brien’s First Set of Interrogatories at p. 3. Indeed, Mira goes so far as to allege that “the only economically logical explanation for Mr. O’Brien’s behavior is that O’Brien and [Joseph Noonan, Sr., Gateway’s President] had some type of ‘sweetheart deal’ or ‘kickback’ deal.” Id.
On April 30, 2003, O’Brien served Mira with requests for the production of documents. On June 2, 2003, Mira’s attorney provided O’Brien with 180 documents, totaling 583 pages, responsive to that request. Mistakenly included in that production was a privileged December 17, 2001 letter from Mira’s current Chief Executive Officer, William D. Curtin, to Mira’s then-attorney, William O’Brien (no relation to and not to be confused with the defendant Daniel O’Brien). The attorney for defendant O’Brien, upon receipt of this document, informed Mira’s counsel of its inclusion in the document submission and of its position that Mira’s attorney-client privilege had thereby been waived. Mira now moves to preclude any evidentiary use of this inadvertently disclosed privileged communication. O’Brien, pressing its claim of waiver, has moved to compel Mira to produce all its otherwise privileged attorney-client communications.
DISCUSSION
The Supreme Judicial Court has rejected the so-called “traditional view” that a document’s confidentiality and privilege is destroyed once its contents become public, regardless of the means by which it became public. In the Matter of the Reorganization of Electric Mutual Liability Ins. Co. Ltd. (Bermuda), 425 Mass. 419, 422 (1997) (“EMLICO”)- In its place, the Court has ruled that the inadvertent disclosure of a privileged document does not waive or destroy the attorney-client privilege when the client establishes that adequate precautions were taken to ensure the document’s confidentiality. Id. at 422-23.
In considering whether adequate precautions were taken in the case at bar, this Court is mindful that, in every case of inadvertent disclosure where this issue is raised, whatever precautions existed necessarily must have failed because the disclosure mistakenly occurred. Therefore, “[i]t must be obvious that the precautions cannot be deemed less than reasonable solely because they failed.” Commerce & Industry Insurance Company v. E.I. DuPont de Nemours and Company, 12 Mass. L. Rptr. 574, 2000 WL 33223235 (Superior Ct., Dec. 11, 2000) (vanGestel, J.). Rather, the determination as to whether the precautions taken were adequate must focus on whether the attorney was so careless in his handling of privileged attorney-client documents as to indicate by his conduct that the documents were not intended to be treated as confidential. See EMLICO at 422-23. This Court is satisfied from the affidavits furnished with these mo *708 tions that Mira’s attorney had adequate precautions in place to prevent the disclosure of attorney-client communications, but that a single careless mistake was made which those precautions did not succeed in preventing. Without excusing the error, this Court certainly understands how a privileged letter from Mira’s CEO to William O’Brien could be confused with an unprivileged letter to Daniel O’Brien, and slip through the privilege review. This Court certainly does not find that Mira’s attorney was so careless in his treatment of attorney-client privileged communications as to permit an inference that the client did not intend such communications to remain confidential. Therefore, this Court finds that the inadvertent disclosure here did not waive Mira’s attorney-client privilege as to the December 17, 2001 letter or, for that matter, as to any attorney-client privileged communication.
This finding, however, does not entirely resolve the issue. Under Rule 3.3(a)(2) of Supreme Judicial Court Rule 3:07, the Massachusetts Rules of Professional Conduct, a lawyer ethically is prohibited knowingly to “fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client . . .” As explained in the Commentary to this Rule, this obligation means that, when a client offers false evidence, an attorney must prefer his duty of candor to the court over his duly to protect privileged attorney-client communications, and disclose the client’s deception to the court or to the adverse parly. Comments 5 & 6, Mass. R. Prof. Conduct 3.3.
O’Brien’s attorney (quite properly) has read the privileged December 17, 2001 letter and argues that the contents of this letter, specifically paragraph 5, directly refutes Mira’s contention in answer to interrogatories that the September 2000 agreement was so “one sided and grossly unfair” that the only logical reason for O’Brien to have entered into such a contract with Gateway was the promise of an illegal kickback. In essence, O’Brien contends that, if the December 17, 2001 letter had not been inadvertently disclosed, Mira’s attorney would still have an ethical duly to disclose the contents of paragraph 5 of this letter if Curtin (or another authorized representative of Mira) were to testify at trial as it has answered its interrogatories. Mira’s attorney disputes O’Brien’s contention that paragraph 5 of the privileged letter contradicts the answers to interrogatories. This Court, having read this letter in camera, finds that both interpretations are possible and that a determination as to which interpretation is more accurate would require more information about the background and context of this letter.
While this Court has found that the inadvertent disclosure by Mira’s attorney did not waive Mira’s attorney-client privilege, it does not intend, by this ruling, to require O’Brien’s attorney to sit quietly if Curtin (or another authorized representative of Mira) were to testify falsely. If O’Brien’s attorney believes that the inadvertently disclosed letter contained information that established the falsity of the testimony at trial, he or she should have the opportunity to approach the Court at sidebar and ask permission to use the privileged lettep to impeach the purported false testimony, much as a prosecutor may use a suppressed confession to cross-examine a defendant who testifies at trial and offers evidence contrary to his confession. Cf. Harris v. New York, 401 U.S. 222 (1971). At that time, the Court may consider O’Brien’s proffer and determine whether the interests of justice require the use at trial of information contained in the privileged letter. To permit the trial judge to resolve this controversy promptly and accurately, this Court shall permit O’Brien’s attorney to retain the privileged letter that was inadvertently disclosed as long as access is limited only to those attorneys who have already read it. This Court shall also permit Curtin to be deposed concerning the purpose and meaning of this privileged letter, provided that this portion of the deposition shall be closed to all but necessary attorneys and this portion of the transcript shall be sealed.
ORDER
After hearing, for the reasons detailed above, this Court ORDERS as follows with respect to Mira’s motion to preclude evidentiary use of inadvertently disclosed privileged communications, and O’Brien’s motion to compel production of attorney-client communications:
Mira’s motion to preclude evidentiary use of inadvertently disclosed privileged communications is ALLOWED to the extent that O’Brien is barred from making evidentiary use of the inadvertently disclosed December 17, 2001 letter except with the advance approval of the trial judge, predicated by the admission of false testimony that would be contradicted by the privileged letter.
O’Brien’s motion to compel production of attorney-client communications is DENIED in view of this Court’s finding that the inadvertent disclosure here did not waive Mira’s attorney-client privilege as to the December 17, 2001 letter or, for that matter, as to any attorney-client privileged communication. This Court shall permit O’Brien’s attorney to retain the privileged letter that was inadvertently disclosed as long as access is limited to only those attorneys who have already read it. This Court shall also permit Curtin to be deposed concerning the purpose and meaning of this privileged letter, provided that this portion of the deposition shall be closed to all but necessary attorneys and this portion of the transcript shall be sealed.